*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1592**

In re the Marriage of: Nicholas John Kaminski, petitioner,
Appellant,

vs.

Tammy Marie Hackett,
Respondent.

**Filed August 1, 2016
Affirmed
Connolly, Judge**

Chisago County District Court
File No. 13-F9-03-001123

Michelle Lea-Atkinson Kelsey, Kelsey Law Office, P.A., Cambridge, Minnesota (for appellant)

Kay Nord Hunt, Margie R. Bodas, Lommen Abdo, P.A., Minneapolis, Minnesota; and

Virginia M. Stark, Stark Law Office, Lindstrom, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Larkin, Judge; and Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant challenges the district court's denial of his motion for sole physical custody of his minor son, arguing that the district court erred by (1) considering the wrong standard in determining physical custody and (2) considering only one factor of the best interests of the child analysis to the exclusion of all others. Respondent challenges the district court's grant of appellant's motion for sole legal custody and award of attorney fees, arguing that the district court erred by (1) failing to limit its award of sole legal custody to only matters pertaining to the minor child's health and (2) failing to make findings sufficient to award conduct-based attorney fees. Because the district court performed a thorough analysis of the parties' custody-related questions and made sufficient findings as to the conduct justifying an award of attorney fees, we affirm.

## FACTS

Appellant Nicholas John Kaminski and respondent Tammy Marie Hackett were married in 2002. The parties have one child, W.H., who is currently 13 years old. The parties were divorced in 2004. As part of the marital dissolution, the district court awarded the parties joint legal and physical custody of W.H.

In November 2011, Hackett petitioned for an Order for Protection (OFP) against Kaminski on behalf of W.H. The OFP was issued without findings based on an agreement between the parties and W.H. was ordered to begin individual therapy. Kaminski did not have further parenting time with W.H. until the OFP expired in December 2012 at which time he resumed parenting time with W.H. every other weekend. In July 2013, Hackett

petitioned for another OFP against Kaminski on behalf of W.H. but the petition was eventually dismissed by agreement. In addition to dismissing the OFP, the parties stipulated that they would meet with Dr. Michael Keller, a psychologist, who would determine the frequency of therapy visits and make recommendations as to parenting time.

The parties began to meet with Dr. Keller in October 2013. After several sessions, the parties agreed that Kaminski would resume having overnight parenting time with W.H. on February 14, 2014. On February 13, 2014, W.H. threatened to kill himself. As a result of the threat, overnight parenting time with Kaminski was cancelled until May 2014.

In May 2014, Kaminski moved the district court to grant him sole custody of W.H. on the grounds that W.H. was endangered when in Hackett's custody. Based on the parties' submissions, the district court determined that Kaminski had presented a prima facie case that W.H.'s emotional health was endangered and ordered an evidentiary hearing.

At the evidentiary hearing, the parties presented evidence regarding W.H.'s home environment and mental state. Based on the testimony of the parties and several mental health professionals, the district court made several findings of fact.[1] The district court's findings included: (1) Hackett's testimony was not credible as she was inconsistent in her statements, could not recall details, and was defensive and evasive during testimony; (2) W.H. is manipulative and Hackett enables W.H.'s manipulations either intentionally or unintentionally; (3) Hackett is undermining Kaminski's relationship with W.H.;

---

[1] While the district court did not contain its factual findings to a single section of its order, "a fact found by the court, although expressed as a conclusion of law, will be treated upon appeal as a finding of fact." *Graphic Arts Educ. Found. v. State*, 240 Minn. 143, 146, 59 N.W.2d 841, 844 (1953).

(4) Hackett has an unrealistic view of W.H.'s mental health and behaviors and seems focused on keeping W.H. happy at the expense of W.H.'s mental health; (5) W.H.'s health would be endangered if Hackett continues to have the authority to make medical decisions for W.H.; (6) while Hackett's behaviors raise concern, they do not rise to the level of endangerment required to modify physical custody; (7) that there had not been domestic abuse by Kaminski against W.H.; and (8) W.H. needs to undergo a psychological evaluation and continue counseling in order for him to be able to establish a healthy relationship with both parents.

The district court issued an order transferring sole legal custody of W.H. to Kaminski, concluding that Hackett's enabling attitude towards W.H. was preventing him from getting the psychological care he requires. The district court also denied Kaminski's motion for sole physical custody, finding that a sudden and abrupt change in living environment is not in W.H.'s best interest considering his reactionary nature and past threats of suicide. The district court then proceeded to perform a "best interest" analysis under Minn. Stat. § 518.17 (2014). Lastly, the district court granted Kaminski's motion for conduct-based attorney fees in the amount of $15,000.

Kaminski formally requested permission to bring a motion for reconsideration, arguing that the district court erred in applying the endangerment standard of Minn. Stat. § 518.18 (2014) rather than the best interests analysis of Minn. Stat. § 518.17. The district court denied Kaminski's request. Kaminski appeals.

Kaminski contests the district court's denial of his motion for sole physical custody.

Hackett cross-appeals the district court's decision to award Kaminski sole legal custody.

The district court has broad discretion in reviewing and resolving child-custody disputes.

*Durkin v. Hinich*, 442 N.W.2d 148, 151 (Minn. 1989). This court's review of the custody

decision is limited to determining whether the district court abused that broad discretion

by making findings not supported by the evidence or by improperly applying the law. *Id.*

This court examines the record in the light most favorable to the district court's findings

and defers to the district court's credibility determinations. *Vangsness v. Vangsness*, 607

N.W.2d 468, 472 (Minn. App. 2000).

Neither party has provided complete transcripts of the hearing to this court. "An

appellant has the burden to provide an adequate record." *Mesenbourg v. Mesenbourg*, 538

N.W.2d 489, 494 (Minn. App. 1995). The district court's order was based in large part on

testimony that has not been made available on appeal. Consequently, this court's review

of the district court's factual findings is confined to the partial record before it. *Stevens v.*

*Stevens*, 367 N.W.2d 553, 555 (Minn. App. 1985).

**I.     The district court did not err in applying the wrong standard for modification of legal and physical custody.**

"Section 518.18(e) requires the court to apply the endangerment standard in joint

custody cases, unless . . . the parties agree in writing to the application of a different

standard." *Ayers v. Ayers*, 508 N.W.2d 515, 520 (Minn. 1993) (quotation omitted). The

district court's findings must be sustained unless clearly erroneous, but we need not defer

to the trial court in reviewing questions of law. *Dabrowski v. Dabrowski*, 477 N.W.2d 761, 764 (Minn. App. 1991). Determining the proper statutory standard to be applied presents a question of law. *Id.*

In the course of Hackett and Kaminski's 2004 marital dissolution, the district court ordered that "[s]hould either party bring a motion for change of custody, the judicial standard of review shall be 'best interests' as set forth in Minnesota Statute Section 518.17 and not the 'endangerment' standard as set forth in Minnesota Statute Section 518.18." It is uncontested that the parties agreed that the best-interests test would control in future custody modifications.

In Kaminski's motion to modify custody, he specifically petitioned the court "[f]or a finding of endangerment of the minor child when in [Hackett]'s care." In its conclusions of law, the district court explicitly engaged in an analysis under the endangerment standard of Minn. Stat. § 518.18. The district court found that "[W.H.]'s health is endangered if [Hackett] continues to have the authority to make medical decisions for [W.H.]" but also noted that "while [Hackett]'s behaviors are concerning they do not rise to the level of endangerment required to modify physical custody." The district court then proceeded to conduct what Kaminski concedes was a very detailed analysis of the best interest factors leading to its ultimate decision to award Kaminski sole legal custody.

On appeal, Kaminski argues that the district court erred in applying the endangerment standard in violation of the 2004 agreement. He asserts that while the district court's analysis of the best interests factors favor the grant of sole physical custody,

6

the district court denied his motion only because of the finding that W.H. was not endangered to the extent necessary to modify physical custody.

After a thorough best-interest analysis, the district court found that a rapid change from living with Hackett would very likely be detrimental to W.H and cause him to act out in ways that may be self-destructive. The district court subsequently found that limiting Hackett's parenting time in such a manner would not be in the best interest of W.H. Based on the district court's findings of fact, this conclusion is supported by the record and is therefore not an abuse of discretion.

Further, this court will decline to remand a district court decision when "from reading the files, the record, and the court's findings, on remand the district court would undoubtedly make findings that comport with the statutory language" and reach the same result. *Grein v. Grein*, 364 N.W.2d 383, 387 (Minn. 1985). In response to Kaminski's request for permission to motion for reconsideration, the district court explicitly stated that modification of physical custody was not in W.H.'s best interests based on the best-interest factors. As the district court has now ruled twice that sole physical custody for Kaminski would be contrary to W.H.'s best interests and has explicitly rejected the argument based on which Kaminski seeks a remand, there can be little doubt the district court would reach the same result on remand, and we affirm.

## II. The district court conducted a thorough best-interest analysis and did not abuse its discretion.

To determine whether modification is necessary to serve the child's best interests, the district court must consider "all relevant factors," including: (1) the parents' wishes;

7

(2) the child's preference; (3) the child's primary caretaker; (4) the intimacy of the parent-child relationship; (5) the child's relationships with parents, siblings, and other persons who affect the child; (6) the degree to which the child has adjusted to home, school, and the community; (7) the length of time the child has lived in a stable environment and the desirability of maintaining continuity; (8) the permanence of the existing or proposed custodial home; (9) the mental and physical health of those involved; (10) the parties' abilities to give the child love, affection, and guidance, and educate and raise the child in the child's culture and religion; (11) the child's cultural background; (12) the effect of the actions of an abuser on the child; and (13) the ability of each parent to encourage contact between the other parent and the child. Minn. Stat. § 518.17, subd. 1(a). "Appellate review of a custody determination is limited to determining whether the district court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Zander v. Zander*, 720 N.W.2d 360, 365-66 (Minn. App. 2006), *review denied* (Minn. Nov. 14, 2006). But, "current law leaves scant if any room for [us] to question the [district] court's balancing of best-interests considerations." *Vangsness*, 607 N.W.2d at 477.

**A.    The district court did not consider one factor to the exclusion of all others.**

Kaminski argues the district court considered only one factor when deciding if modification of physical custody was merited: the length of time W.H. has lived in a stable, satisfactory environment and the desirability of maintaining continuity. This argument fails. In holding that granting Kaminski sole physical custody was not in the best interest of W.H., the district court did not merely rely on the length of time W.H. has resided with

8

Hackett but explicitly took account of the other best-interest factors including W.H.'s mental and emotional needs, the degree to which W.H. had adjusted to his surroundings, and the willingness of the parties to cooperate in the rearing of W.H. As the district court considered and weighed multiple factors in deciding whether a modification of physical custody was in W.H.'s best interests, it did not abuse its discretion by considering one best-interest factor to the exclusion of the other factors.

**B.    The district court did not abuse its discretion in failing to award Kaminski sole physical custody.**

Kaminski argues that the district court erred in denying his motion for sole physical custody, asserting that "if the endangerment standard is met to modify legal custody, it must also have been met to modify physical custody." In support of his argument, Kaminski cites *Matson v. Matson*, which states that the standards contained in Minn. Stat. § 518.18(d) "apply to the modification of legal custody, as well as physical custody." 638 N.W.2d 462, 467 (Minn. App. 2002). However, in *Matson*, this court held that a party seeking to modify child custody must establish a prima facie case for modification in order to be entitled to an evidentiary hearing regardless of whether the party seeks to modify physical or legal custody. *Id.* Contrary to Kaminski's assertions, *Matson* does not stand for the proposition that a district court's analysis of best-interest factors must necessarily lead to a single party receiving both legal and physical custody.

In the present matter, the district court engaged in a detailed analysis of the best interest factors in concluding that it was in the best interests of W.H. to grant Kaminski sole legal custody but given the particular circumstances it was not in W.H.'s best interests

9

to grant Kaminski sole physical custody. As the district court's determinations are supported by the factual findings, the district court did not err.

### C. The district court did not abuse its discretion in granting Kaminski sole legal custody and/or failing to limit its modification.

Hackett argues that the district court erred by failing to limit its modification to only granting Kaminski sole legal custody as it relates to W.H.'s mental health. She argues that the district court's findings of fact and conclusions of law only support giving Kaminski sole legal custody over W.H. as it relates to his psychological care.

Minn. Stat. § 518.17, subd. 3(a)(1) authorizes a district court to determine by order whether legal custody of a minor child will be sole or joint. In its findings of fact and conclusions of law the district court held that the only way to ensure W.H. receives the psychological care he requires is to award sole legal custody to Kaminski. The district court did not make any explicit findings that W.H.'s educational, cultural, or religious concerns supported or opposed a change in legal custody. However, because the district court's grant of Kaminski's motion for sole legal custody of W.H. was supported by voluminous findings of fact as to the threat to W.H.'s health posed by Hackett retaining legal custody, it did not abuse its discretion.

### III. The district court did not abuse its discretion in awarding appellant $15,000 in attorney fees.

A district court may, in its discretion, award conduct-based attorney fees against a party who unreasonably contributes to the length or expense of the proceeding. Minn. Stat. § 518.14, subd. 1 (2014). "An award of conduct-based attorney fees is reviewed for an abuse of discretion." *Brodsky v. Brodsky*, 733 N.W.2d 471, 476 (Minn. App. 2007) (citing

10

*Sharp v. Bilbro*, 614 N.W.2d 260, 264 (Minn. App. 2000), *review denied* (Minn. Sept. 26, 2000)). Findings of fact are "needed to permit meaningful appellate review on the question whether attorney fees are appropriate because of a party's conduct." *Kronick v. Kronick*, 482 N.W.2d 533, 536 (Minn. App. 1992) (citing *Moylan v. Moylan*, 384 N.W.2d 859, 863 (Minn. 1986)).

Here, while the district court found that Hackett unreasonably contributed to the length and expense of the proceedings, Hackett asserts that the district court failed to make findings adequately correlating the amount of attorney fees awarded to Kaminski with the cost or delay caused by her conduct. But Hackett cites no authority requiring a line-by-line accounting of costs incurred as a prerequisite for an award of conduct-based attorney fees. *Cf. Brodsky*, 733 N.W.2d at 479 (stating that "[a] party who inadequately briefs an argument waives that argument"). Further, in support of its award, the district court not only noted Hackett's general and persistent attempts to subvert Kaminski's relationship with W.H., but identified specific actions taken by Hackett as contributing to the fees incurred by Kaminski, including: (1) forcing Kaminski to prepare for mediation only to cancel the mediation session, (2) attempting to remove Kaminski's counsel, and (3) prematurely moving the court to decide issues that would be determined at trial. We conclude that the district court's findings are sufficient to permit meaningful appellate review of the district court's award of conduct-based attorney fees. Further, because both Hackett's pervasive attempts to subvert Kaminski's relationship with the child and her behaviors identified by the district court each necessarily led to cost and delay, we cannot, on this record, say that the district court's fee award is an abuse of its broad discretion. *See*

11

*Sharp*, 614 N.W.2d at 264-65 (stating that a district court's findings that a party attempted to subvert a child's relationship with the other parent justified an award of conduct-based attorney's fees.).

**Affirmed.**